UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CINDY L. PUGH,

              Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

              Defendant.

Case No. 3:11-cv-06184 -ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Cindy L. Pugh ("Pugh"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-433, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 USC §§ 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3). For the reasons set forth below, that decision should be reversed and remanded for the calculation and award of benefits for that period of time between the onset date and Pugh's 50th birthday.

1 - FINDINGS AND RECOMMENDATION

## ADMINISTRATIVE HISTORY

Pugh protectively filed for DBI and SSI on November 16, 2006, alleging a disability onset date of September 16, 2005.  Tr. 145-48.[1]  Pugh was insured for disability benefits through September 30, 2006.  Tr. 7, 54.[2]

Pugh's applications were denied initially on March 13, 2007, and on reconsideration on July 31, 2007.  Tr. 89-105.  Administrative Law Judge ("ALJ") John J. Madden, Jr., held a hearing on August 19, 2008, at which Pugh appeared and testified.  Tr. 50-82.  The ALJ suspended consideration of Pugh's claims pending a comprehensive medical examination and submission of missing records.  Tr. 79-81.

A year later, on August 19, 2009, ALJ Madden held a second hearing.  Tr. 30-49.  Pugh and a vocational expert ("VE"), Jeffrey Tidlefits, appeared and testified.  Tr. 31.  On November 3, 2009, the ALJ issued a decision finding Pugh not disabled.  Tr. 15-29.  Pugh requested review of the ALJ's decision.  Tr. 13-14.

On March 29, 2011, the Appeals Council issued a partially favorable decision.  Tr. 5-9.  Because the VE identified only sedentary level jobs that Pugh could perform, the Appeals Council affirmed the ALJ's RFC finding that Pugh could perform a limited range of light work, but applied the functional framework applicable to a sedentary exertional level. Tr. 6-7.  For the time period prior to Pugh's 50th birthday, the Appeals Council affirmed the ALJ's decision that she was not disabled within the meaning of Titles II and XVI of the Act. Tr. 5-8; *see* 20 CFR pt. 404, subpt. P, app. 2, § 201.21 (2011).  However,

---

[1]  Citations are to the page(s) indicated in the official transcript of the record filed on November 15, 2011 (docket # 7).

[2]  The initial denial of Pugh's claim indicates a date last insured of September 1, 2006, which appears to be an error.  Tr. 89.

the Appeals Council found Pugh was disabled once she attained age 50 because she had

entered a new age category ("closely approaching advanced age") in which someone with

her education and vocational factors was disabled pursuant to Social Security regulations.

Tr. 6-8; *see* 20 CFR pt. 404, subpt. P, app. 2, § 201.06.  The Appeals Council clarified that

Pugh did not attain age 50 at any time during the period when she was insured for Title II

benefits, and therefore affirmed the ALJ's decision that Pugh was not entitled to Title II

benefits.  Tr. 5-6, 8.

The Appeals Council's decision is the Commissioner's final decision on this case,

subject to judicial review.  This appeal involves the approximate four year period between

Pugh's alleged onset date on September 16, 2005, and her 50th birthday.

## BACKGROUND

Born in 1959, Pugh had just reached age 49 at the time of the first hearing before the

ALJ and age 50 at the time of the second hearing before the ALJ.  Tr. 32, 56.  She has a

high school education and past relevant work experience as a caregiver, cashier, and maid.

Tr. 33, 39, 56.  Pugh alleges she is unable to work due to her combined impairments of back

injuries, diabetes, cardiovascular disease, high blood pressure, depression, and anxiety.

Tr. 158.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months[.]"  42 USC § 423(d)(1)(A).  The ALJ engages in a five-step sequential

inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR § § 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the

claimant can perform other work in the national economy.  *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g).

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC.  *Id*.  If the Commissioner meets this burden, then the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g), 416.960(c).

## ALJ's FINDINGS

At step one, the ALJ concluded that Pugh has not engaged in substantial gainful activity since September 16, 2005, the alleged onset date.  Tr. 20.

At step two, the ALJ determined that Pugh has the severe impairments of degenerative disc disease of the cervical and lumbar spine, diabetes mellitus, and depression.  Tr. 20-22.

At step three, the ALJ concluded that Pugh does not have an impairment or combination of impairments that meets or equals any of the listed impairments.  Tr. 22-24. The ALJ found that Pugh has the RFC to perform limited light work, based on the ALJ's conclusions that Pugh can:  (1) lift and carry 10 pounds both frequently and occasionally; (2) sit for seven hours, stand for four hours, and walk for three hours during an eight hour work day, performing each of those activities for stretches of one hour at a time; (3) reach frequently, except only reach overhead bilaterally on an occasional basis; (4) handle, finger, and feel on a continuous basis; (5) push and pull occasionally (if within the 10 pound weight restriction); (6) occasionally use foot controls, stoop and crouch, and work with

environmental factors such as at unprotected heights, around moving machinery, dust, fumes, and odors, etc.; and (7) frequently balance and kneel. Tr. 24. The ALJ found Pugh unable to crawl, or to perform work requiring the use of math or in public service. *Id*. He also restricted her to "simple and repetitive" work. *Id.*

Based upon the VE's testimony, the ALJ determined at step four that Pugh's RFC precluded her from returning to her past relevant work as a caregiver, cashier, or maid. Tr. 27.

At step five, the ALJ found that considering Pugh's age, education, and RFC, she was capable of performing sedentary, unskilled work as a document sorter (DOT #249.587-018), an addresser (DOT #209.587-010), or a packager/sealer (DOT #559.687-014). Tr. 28. Accordingly, the ALJ determined that Pugh was not disabled at any time through the date of the decision.

## **STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn

from the record.'" *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035.

## **FINDINGS**

Pugh first argues that the Commissioner erred by failing to properly evaluate: (1) the opinions of her treating and examining doctors; and (2) her subjective symptom testimony. She contends that, if properly credited, these opinions and testimony entitle her to benefits without the need for a remand to the Commissioner. This court agrees and concludes that Pugh is entitled to benefits for the period of time between her onset date and her 50th birthday.

Pugh also argues that the Commissioner erred by failing to incorporate the opinions of the other two examining doctors statements. James Ruether, M.D., who examined and assessed Pugh on February 22, 2007, opined that she "would have some difficulty in completing workplace tasks in a timely fashion" and "would experience at least some interruption during a normal workweek from her depression." Tr. 247. James Wahl, Ph.D., who examined Pugh on February 5, 2008, opined that she "might not do well with jobs involving constant stress or departures from expected routine." Tr. 418. This court need not resolve these challenges as it is clear that the decision to deny benefits prior to Pugh's 50th birthday must be reversed once Pugh's testimony and the opinion of her treating doctor are properly credited.

## I. **Treating Doctor's Opinion**

Pugh first contends that the Commissioner erred by failing to properly credit the opinions of her treating physician, Wen Sum Lum, M.D.

///

A. **Legal Standard**

The weight given to the opinion of a physician depends on whether it is from a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician who has a greater opportunity to know and observe the patient as an individual.  *Orn v. Astrue*, 495 F3d 625, 632 (9th Cir 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id*; *Widmark v. Barnhart*, 454 F3d 1063, 1067 (9th Cir 2006).  Even if the opinion is contradicted by another physician, the ALJ may not reject it without providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F3d at 632; *Widmark*, 454 F3d at 1066; *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F3d 595, 600 (9th Cir 1999).

The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  *Widmark*, 454 F3d at 1066 n2.  However, it may serve as substantial evidence when it is supported by and consistent with other evidence in the record.  *Morgan*, 169 F3d at 600.

B. **Dr. Lum's Opinions**

Dr. Lum treated Pugh beginning on June 1, 2006, about four months before her insured status expired.  Tr. 365-67.  In September 6, 2006, Dr. Lum examined Pugh and completed a disability services evaluation.  Tr. 349-353.  In that evaluation, Dr. Lum opined that Pugh had cervical radiculopathy and degenerative disc disease which caused "marked" difficulties in her abilities to lift, handle, or carry, as well as lumbar radiculopathy and degenerative disc disease which caused "marked" difficulties in her ability to walk and lift, all of which combined to limit her to sedentary work.  Tr. 350.  Dr. Lum expected Pugh's

limitations to continue for at least 12 months. Tr. 341. A few months later, on December 20, 2006, Dr. Lum completed a "Multiple Impairment Questionnaire" further detailing Pugh's condition. Tr. 235-41. In that questionnaire, Dr. Lum opined that Pugh could sit only one hour and stand or walk only one hour in an eight hour work day, must get up and move around every hour for about 30 minutes, could lift or carry only up to five pounds occasionally, was moderately limited in using her arms, and had a condition which interfered with her ability to keep her neck in a constant position. Tr. 237-39. Dr. Lum felt Pugh could perform only low-stress work and would need to take unscheduled breaks of 30 minutes to an hour every hour or two. Tr. 240.

### C. **Analysis**

The ALJ found that Dr. Lum's "opinion of extreme limitations did not merit much weight." Tr. 27. In support, the ALJ gave two reasons. First, he found that "[i]n merely checkmarking answers, [Dr. Lum] failed to provide objective medical findings in support of [her] conclusions." *Id.* Second, he found that Dr. Lum's "opinion stands alone" because "no other physician who treated or examined [Pugh] found the presence of so many or so extreme restrictions." *Id.* Rather than crediting Dr. Lum's opinions, the ALJ credited those of Dr. Raymond P. Nolan, M.D., Ph.D., who examined Pugh on October 4, 2008 (Tr. 24, 420-29) and DeWayde Perry, M.D., who examined Pugh on August 25, 2009, but without the benefit of reviewing any of Pugh's medical records (Tr. 24, 474-48).

The ALJ's observation that no other physician found the presence of the same restrictions as did Dr. Lum is nothing more than a finding that Dr. Lum's opinion is contradicted by the opinions of other doctors. But the mere contradiction of Dr. Lum's opinion is not a reason to discredit her opinion. Rather, that finding merely determines

whether Dr. Lum's opinion is entitled to controlling weight.  *Orn*, 495 F3d at 631-35.  An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another treating or examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas v. Barnhart*, 278 F3d 947, 956-57 (9th Cir 2002), quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989).  If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons.  *Id.*

The only other reason given by the ALJ for rejecting Dr. Lum's opinion is a failure to provide objective medical findings.  That reason is neither specific nor legitimate. The record reveals that Dr. Lum's opinions are supported by her own multiple independent examinations (Tr. 336, 338, 344-45, 352-54, 356, 365-67), review of various MRI studies, and referral of Pugh both to the Interventional Pain Management Clinic and for a neurosugical evaluation (Tr. 218-21, 303-04, 301-29).  Dr. Lum did not merely checkmark answers, but provided accompanying written evaluations which opined both that Pugh was not a malingerer and that the limitations endorsed were consistent with Pugh's impairments. Tr. 236, 240.

The ALJ's summary rejection of Dr. Lum's opinions simply does not meet the required standard of "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' are correct."  *Orn*, 495 F3d at 632 (internal quote marks and citations omitted).  Thus, the ALJ erred by rejecting Dr. Lum's opinions.

///

10 - FINDINGS AND RECOMMENDATION

## II. **Pugh's Credibility**

### A. **Legal Standard**

The ALJ must consider all symptoms and pain which can "reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F3d at 1036, citing *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir 2006)*.*

There is no evidence that Pugh is a malinger. To the contrary, Dr. Lum specifically opined that she is not. Tr. 240. Accordingly, the ALJ was required to provide clear and convincing reasons for a negative credibility finding.

### B. **Pugh's Testimony**

#### 1. **August 2008 Hearing**

At the initial hearing on August 19, 2008, Pugh testified that she was living in drug-and-alcohol-free housing.  Tr. 65.  Due to her diabetes, Pugh was on a walking program. She walked about a half a mile each morning, which would take about 45 minutes to an hour because she had to take multiple breaks to sit on park benches.  Tr. 61-62, 68.  She could not walk any longer than about 45 minutes without pain in her hips and lower back.  Tr. 75. Pugh thought she could sit for one hour before she would need to get up and move around due to pain in her lower back.  *Id*.  She could not lift much more than five pounds and could not lift objects at or above shoulder level, but could hold her arms in front of her body. Tr. 76.  She also had a reduced range of motion in her neck, making it difficult to turn her head, especially to the left.  Tr. 76.

Pugh reported that she would lay down for about an hour every day to relax her body and relieve the stiffness in her back.  Tr. 77.  At night, her sleep was interrupted about every three hours due to muscle cramps and pain in her shoulders, lower back, and calves.  Tr. 71.

For the prior 11 months, Pugh was involved in both Narcotics Anonymous ("NA") and Alcoholics Anonymous ("AA"), working on a 12-step program.  Tr. 63.  She attended daily weekday meetings of either NA or AA.  Tr. 64.  As part of her housing arrangement, Pugh assisted another resident in the kitchen cooking for the 16 residents two nights per week.  Tr. 66-67.  That would take about an hour, after which she had to rest.  Tr. 9.

Pugh took non-narcotic Tramadol for pain, Robaxin for muscle spasms, and Paxil for depression, as well as diabetes and high blood pressure medications.  Tr. 72.  Other than reading, Pugh participated in no activities and had no social activities.  Tr. 73.  Pugh had not

12 - FINDINGS AND RECOMMENDATION

been to any specialist, such as an orthopedic surgeon or neurologist because, at that time, she had not been approved for treatment under the Oregon Health Plan.  Tr. 60-61.  She also was unable to check her blood sugar levels as she could not pay for the blood sugar testing strips.  Tr. 62, 70-71.

### 2. **August 2009 Hearing**

At the second hearing on August 19, 2009, Pugh testified that her condition was about the same as it had been at the time of the prior hearing.  Tr. 34.  However, since the prior hearing, Pugh had been placed on insulin four times per day to control her blood sugar. Tr. 34-35.  Pugh had still not been referred to a specialist because she had no insurance. Tr.  37.  She had been evaluated by Charles P. Reagan, M.D., about a month earlier (Tr. 469-72) and was scheduled for an exam the following week through DHS.[3]  Tr. 37-38. Pugh continued to lay down every day for about an hour whenever she became really tired. Tr. 47.

### C. **Analysis**

The ALJ rejected Pugh's testimony concerning the intensity, persistence and limiting effects of her symptoms to the extent her testimony was inconsistent with the RFC assessment he endorsed.  Tr. 25.  The ALJ cited various medical record entries, including those of Norman Rokosz, M.D., (July 26, 2006, Tr. 218-21), Dr. Reuther (February 22, 2007, Tr. 242-47), Dr. Nolan (October 4, 2008, Tr. 420-23), Dr. Reagan (July 22, 2009, Tr. 469-72), and Dr. Perry (August 25, 2009, Tr. 474-78).  However, other than a general assertion that Pugh's testimony conflicted with the ALJ's RFC assessment, the ALJ gave no explanation for rejecting it.  In particular, just as the ALJ failed to properly discredit the physical restrictions endorsed in

---

[3]  Dr. Perry performed that examination on August 25, 2009.  Tr. 474-78.

Dr. Lum's opinions, so, too, he failed to properly discredit the testimony by Pugh concerning her need to change positions, take unscheduled rest breaks, and otherwise accommodate her persistent neck and back pain.

The ALJ's recitation of Pugh's daily activities does not alter this failure. While Pugh testified to a variety of daily activities in her then-current living arrangement, her testimony makes clear that the context and manner in which she performs those activities is not inconsistent with her other testimony concerning the limitations imposed by her impairments. Accordingly, the ALJ erred in his assessment of the limiting effects of Pugh's impairments, which went well beyond those endorsed in the ALJ's RFC assessment.

## III.  Result of Commissioner's Errors

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d 1135, 1138-39 (9th Cir 2011), quoting *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ

would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but gives the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003), citing *Bunnell*, 947 F2d at 348. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

As discussed above, the ALJ erred by failing to provide legally sufficient reasons for rejecting the opinion of Pugh's physician, Dr. Lum, and discrediting Pugh's testimony. Thus, that evidence should be credited as true. *See Harman*, 211 F3d at 1179. Turning to the other two facets of the *Harman* inquiry, this court finds that no outstanding issues must be resolved before a determination of disability can be made and that it is clear from the record that the ALJ would be required to find Pugh disabled prior to her 50th birthday if the evidence is credited.

The RFC established by the ALJ (Tr. 24) and adopted by the Appeals Council (Tr. 7) fails to incorporate any limitation which fully captures the symptoms associated with Pugh's neck injury. On December 20, 2006, Dr. Lum opined that Pugh's condition would interfere with her ability to keep her neck in a constant position, such as looking at a computer screen or looking down at a desk. Tr. 239. As discussed above, the ALJ wholly failed to make findings which would justify rejecting Dr. Lum's opinions. Moreover, Dr. Lum's opinion is consistent both with Dr. Rokosz's July 26, 2006 chart entry that "[Pugh has] persistent severe neck pain ever since the falling out of a chair at work in September of 2005" prompting him to note his concern that Pugh "is going to have some neck pain for the rest of her life" (Tr. 221), as well as with Dr. Lum's chart entry of September 6, 2006, prior to the expiration of Pugh's insured status

that she "has significant neck stiffness with flexion and extension of the neck. Pain is brought on by rotation of the neck to either side." Tr. 352.

The VE testified that all of the jobs he identified require forward neck flexion on a sustained basis. Tr. 48. If the worker could sustain forward neck flexion for only about a third of the work day, he or she would not be able to perform those jobs. *Id*. The Appeals Council's decision, which did find Pugh disabled as of her 50th birthday, does not cure the error of failing to find her disabled based on the combination of her treating doctor's opinions and the testimony of the VE prior to that date. No further development of the record is necessary. It is clear that had Pugh's treating doctor's opinion been given the weight to which it was entitled, Pugh should have been found disabled based on the testimony of the VE. Because the evidence establishes that Pugh would be unable to maintain employment, remand for further administrative proceedings serves no useful purpose and is unwarranted.

## RECOMMENDATION

To the extent it rejected a finding of disability prior to Pugh's 50th birthday, the Commissioner's decision should be reversed and remanded for the calculation and payment of benefits.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Friday, July 06, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

///

///

///

16 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED June 19, 2012.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge